CONTINENTAL OIL CO., Plaintiff,

v.

UNITED STATES of America, the Bank
of Bermuda, Ltd., Henry Gordon,
et al., Defendants.

No. 69 Civ. 827.

United States District Court,
S. D. New York.

March 25, 1971.

Dewey, Ballentine, Busby, Palmer &
Wood, by Edward N. Sherry and Francis
R. Jones, New York City, for plaintiff.

David M. Brodsky, Asst. U. S. Atty., for the U. S.

Valicenti, Leighton, Reid & Pine, by Albert D. Jordan and William H. Bertin, New York City, for Bank of Bermuda, Ltd.

## OPINION

TYLER, District Judge.

In response to a notice of levy served by the government on February 27, 1969, the Continental Oil Co. (hereinafter "Continental") instituted this interpleader action, pursuant to 28 U.S.C. § 1335, in March, 1969, depositing in the Registry of the Court at that time and thereafter such sums as accrue to the interest of Mr. Edgar Fain.[1] The United States and the Bank of Bermuda, Ltd. (the "Bank") remain the sole contenders for these funds.[2] The United States' claim stems from a jeopardy assessment against the taxpayer Fain in the amount of $1,107,207.14, plus statutory additions of $7,339.34; the Bank lays claim to these funds as assignee and/or vendee of Fain's rights to future payments from Continental.

In December, 1969, defendant Henry Gordon moved for summary judgment with respect to his recently settled claim.[3] In March, 1970, the motion was denied without prejudice because the United States lacked sufficient information upon which to oppose it. Counsel were instructed to commence discovery and submit thereafter memoranda of law setting forth their respective theories for lien priority, to be discussed hereinafter.

On the basis of the memoranda of law submitted by counsel, the following facts appear uncontested:

In consideration of a sale, consummated September 18, 1964, of certain property owned jointly by the taxpayer Fain and his two brothers, Continental as purchaser promised to amortize slightly over ⅔ of the purchase price in seven (7) equal annual instalments payable each September 18 with interest at 4½%. Fain's proportionate interest in the instalments was 16.3686396% or $498,-887. The amount of the 1969 and 1970 annual instalment was subject to some fluctuation by reason of the amount of insurance proceeds received by Continental in each year. Additional consideration for the Fain property consisted of a contingent payment due March 1, 1969, computed on the basis of the cash earnings of the purchased properties, but not to exceed $6,000,000, plus 4% interest from September 18, 1964, which amount was to be shared in an unspecified proportion by the Fain brothers. Continental further agreed to make the payments negotiable as collateral security for borrowings by the Fains by giving its guarantee to future lenders.

On May 29, 1967, Fain made the so-called "assignment" of his rights to the contingent payment from Continental and to the contingent increases in 1969 and 1970 instalment payments to the Bank of Bermuda. In exchange for the transfer of these rights, Fain received $100,000 cash, plus 95½% of all payments received by the Bank in excess of $100,000. Thus, the Bank was guaranteed return of the $100,000, plus 4½% of any excess. Given the expected size of the contingent payment, it is clear that Fain retained the right to the bulk (approximately 95%) of payments due him. In addition, to secure returns of the $100,000, Fain deposited $100,000 in his Bank of Bermuda account (or, more precisely, the $100,000 received was de-

---

1. The funds were transferred by order of the court to a time account at the Manufacturer's Hanover Bank & Trust Co. By stipulation, dated January 22, 1971, the parties agreed to a procedure for withdrawal by the Bank of amounts in excess of the government's claim.

2. A claim for $52.46 interposed by Henry Gordon has been withdrawn. Thus this opinion will not concern itself with the Gordon-Fain transactions, although related to those detailed herein.

3. Ibid.

posited in his account). The Bank of Bermuda issued to Continental two guarantees totaling $500,000 to cover liabilities to First National City Bank incurred by Henry Gordon on Fain's behalf and for which Fain also promised to pay a .5% fee and to indemnify the Bank. All these transactions were executed by August, 1967.

As of November, 1970, these additional transactions had occurred: (1) upon receiving the insurance proceeds contemplated by the sales agreement in February 1968, Continental relieved the Bank of Bermuda of $400,000 of its guaranty; and (2) on February 3, 1969, the Bank apparently acquired Fain's 95% interest in the March, 1969 contingent payment by paying to Fain $1,040,000. According to the Bank, Fain's contingent interest was then valued at $1,150,000.[4]

On September 6, 1966, Fain renounced his United States citizenship and became a citizen of Nicaragua with a residence in Bermuda. Because of his expatriation, the Internal Revenue Service disallowed instalment basis treatment for the Continental payments received in 1966. In December, 1968, the first jeopardy assessment for 1966, in the amount of $1,120,680.30, was made against Fain and his wife jointly. A revised assessment in the sum of $1,107,207.14 was made on January 17, 1969. Notice of the revised assessment was served upon Fain on January 20, 1969, but not recorded in accordance with 26 U.S.C. § 6323(f) until February 12, 1969, nine (9) days subsequent to the purported acquisition by the Bank of Fain's interest in the allegedly assigned payments. Apparently, notice of lien in accordance with 26 U.S.C. § 6323(f) was never filed respecting the 1968 assessment, a fact which, if controverted, would significantly alter the tentative conclusions set forth below.

The purpose of this interim memorandum is dual: to dispose of certain contentions of the parties with respect to the legal effect of the so-called "assignment" by Fain to the Bank; and to set forth those aspects of this litigation which require clarification and, perhaps, further evidentiary submissions, before the opposing motions for summary judgment, either partial or total, can be decided.

Summary judgment turns on which contender is, in fact and in law, the prior lienor. The government presents three theories for its lien priority: (1) that the May 29, 1967 "assignment" by Fain to the Bank of his rights in the contingent payment and the contingent increases in the 1969 and 1970 instalments was illusory and void; (2) that the "assignment" created merely a security interest in the Bank, which interest remained imperfected prior to the perfection of the tax lien; and (3) that even if the government is not entitled priority over the Bank's security interest, the Bank should be required to marshall other assets of the taxpayer before recourse to the Continental deposits in this proceeding. The Bank urges its lien priority on the diametrically opposed ground that the May 29, 1967 assignment effected a full, absolute and valid transfer of Fain's interest in the Continental payments. Consideration of the government's fourth theory of recovery—that the assignment is void, being a fraudulent transfer in violation of the New York Debtor and Creditor Law §§ 276 and 278 McKinney's Consol.Laws, c. 12—is deferred until final disposition of those grounds amenable to summary judgment.

## I. The Assignment

■ The government's lien for taxes, which arises at time of assessment, 26

4. Attention is directed to the above finding that only the contingent payment was acquired by the February 3, 1969 lump sum payment. Since it is possible that the term "contingent payment" was in- tended to encompass as well the contingent increases on the 1969 and 1970 instalments, counsel are requested to advise the court if there is error in the above construction.

U.S.C. § 6322, attaches to "all property and rights to property, whether real or personal," belonging to the delinquent taxpayer. 26 U.S.C. § 6321. To decide what constitutes such "property or rights to property," the court must look in the first instance to state law, conceded here to be the law of New York. Aquilino v. United States, 363 U.S. 509, 513 et seq., 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), United States v. Bess, 357 U.S. 51, 55–56, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). Therefore, since the assignment, executed May 29, 1967, predated the December 1968 assessment and demand upon the taxpayer, the Bank is the prior lienor to the extent that the assignment effectuated a valid transfer of the Continental monies under New York law. See City of New York v. United States, 283 F.2d 829 (2d Cir. 1960), United States v. Lester, 235 F. Supp. 115 (S.D.N.Y.1964). As previously indicated, however, the question of the vulnerability of this assignment under the New York Debtor and Creditor Law is reserved for future decision.

 The Bank correctly argues that under New York law, funds to become due, either definitely or contingently, are assignable. See 3 N.Y. Jurisprudence, Assignments § 9, Stathos v. Murphy, 26 A.D.2d 500, 276 N.Y.S.2d 727, (1st Dept. 1966), aff'd 281 N.Y.S. 2d 81, 19 N.Y.2d 883, 227 N.E.2d 880 (1967). Nor does the Bank err in reading the state law to sanction enforcement of written assignments regardless of consideration. N.Y.Gen. Oblig.Law § 5–1107 (McKinney's Consol.Laws, c. 24–A 1964), Davin v. Isman, 228 N.Y. 1, 126 N.E. 257 (1920). Thus, if the agreement of May 29, 1967 did indeed intend and effectuate a complete, irrevocable transfer by Fain to the Bank, then under New York law, Fain would have no interest in the Continen-

tal payments as of December, 1968. But therein lies the rub. It is apparent from the face of the assignment agreement that Fain did not thereby transfer dominion and control in respect to at least 95½% of the future payments in excess of $100,000.

 To be enforceable against third parties under New York law, an assignment must be "a complete transfer of the entire interest of the assignor in the particular subject of assignment, whereby the assignor is divested of all control over the thing assigned." 3 N. Y. Juris, Assignments § 28. Fain's right to receive from the Bank approximately 95% of the funds purportedly assigned is as much a contractual right to future proceeds as was the original Continental promise to pay. The transfer of legal title is of no consequence where the assignor retains an absolute right to the proceeds. Awner v. Moscowitz, 12 Misc.2d 221, 176 N.Y.S. 737 (1st Dept. 1919), and see In re Walton's Estate, 20 A.D.2d 386, 247 N.Y.S.2d 21, (1st Dept. 1964). On remand, in Aquilino v. United States, 10 N.Y.2d 271, 219 N.Y.S.2d 254, 176 N.E.2d 826 (1961), the New York Court of Appeals, concerned with the property rights of an assignee, held that bare legal title unaccompanied by beneficial interest is not subject to the government's tax lien. Conversely, I am compelled to conclude that here the Bank did not acquire such interest in the bulk of the Continental monies as would divest the assignor of substantial ownership. The assignment is, therefore, illusory at least insofar as the Continental funds exceed $100,000, plus 4½% of the balance.

The foregoing makes it unnecessary to consider the government's alternative characterization of this transaction as creating a security interest in the Bank.[5] Were it not for the apparent

---

5. The treatment herein of the assignment as an outright transfer is not intended to foreclose the government from further developing its theory that the assignment was for security purposes only, if relevant to future disposition. 26 U.S.C. §§ 6323(a) and (h) (1). Cf. Warren v. Chemical Bank & Trust Co., 274 App. Div. 785, 79 N.Y.S.2d 776 (1st Dept. 1948), Sams v. Redevelopment Authority of City of New Kensington, 436 Pa. 542, 261 A.2d 566 (1970) 4 Corbin, Contracts

payment on February 3, 1969 by the Bank of $1.04 million to Fain in exchange for some portion of his reversionary interest in the Continental funds, the government would be entitled to immediate entry of summary judgment respecting the priority of its lien to the above-described extent. Curiously, however, neither the government nor the Bank accord significance to this payment, which, if a valid purchase under Sections 6323(a) and (h) (6) of the Federal Tax Lien Act of 1966, 26 U.S.C., would entitle the Bank to lien priority.

## II. *The February 3, 1969 Transaction*

Both contenders appear to acknowledge that some or all of Fain's reserved 95% interest in the Continental payments was acquired by the Bank for the sum of $1.04 million on February 3, 1969. This payment, which occurred after the jeopardy assessment was made but before a notice of lien was filed, may have transformed the Bank into a "purchaser" whose claim to the acquired property is protected against an unfiled tax lien. 26 U.S.C. § 6323(a).[6]

To be a purchaser, the Bank must have given "adequate and full consideration". 26 U.S.C. § 6323(h) (6).[7] Prior to the 1966 Tax Lien Act, purchaser status was achieved by the giving of "valuable consideration" even if not adequate. United States v. Scovil, 348 U.S. 218, 221, 75 S.Ct. 244, 99 L.Ed. 271 (1955). Enochs v. Smith, 359 F.2d 924 (5th Cir.

1966). The intended effect of the 1966 language is explained in the Report of the Senate Committee on Finance:

"A purchaser is defined as a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valued under local law as against subsequent purchasers without actual notice. By requiring 'adequate and full consideration', the bill modifies the results reached in court decisions under present law in that the amount paid can no longer be so small as to have little relation to the property acquired. However, this requirement is not intended to preclude a *bona fide* bargain purchaser * * *" Senate Rep.No.1708, 89th Cong., 2d Sess., reprinted in 1966 U.S.Code Cong. & Admin.News, Vol. 3, at p. 3735.

■■ Even before the 1966 revision, the determination of purchaser status turned not upon state law concepts but upon those of federal law. Enochs v. Smith, *supra*. Similarly, the determination of the fullness and adequacy of consideration is a question of federal law. See Creedon, "The Federal Tax Lien Act of 1966: An Historic Breakthrough", 4 Harv. J. Legis. 163, 177 (1966–67). Although this section of the revised Act has not yet been applied in reported decisions, the courts have long interpreted

§ 881, p. 543 (1951), and see Creedon, "Assignments for Security and Federal Tax Liens", 37 Fordham L.Rev. 535 (1968–69).

6. § 6323(a). *Purchase(r)s, holders of security interests, mechanics lienors, and judgment lien creditors.*—The lien imposed by Section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

7. § 6323(h) *Definitions.*—For purposes of this section and section 6324—

(6) *Purchaser.*—The term "purchaser" means a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice. In applying the preceding sentence for the purposes of subsection (a) of this section, and for purposes of section 6324— * * *

(B) A written executory contract to purchase or lease property or any interest therein,

* * * * *

(D) * * * which is not a lien or security in interest shall be treated as an interest in property.

the requirement of adequate consideration in relation to estate and gift tax liens. 26 U.S.C. § 6324. See Commissioner of Internal Revenue v. Wemyss, 324 U.S. 303, 65 S.Ct. 652, 89 L.Ed. 958 (1945), Merrill v. Fahs, 324 U.S. 308, 65 S.Ct. 655, 89 L.Ed. 963 (1945), Smith v. United States, 277 F.Supp, 583 (M.D.Fla.1967), Nourse v. Riddel, 143 F.Supp. 759 (S.D.Cal.1956). Given the expressed intention of the Congress to limit the constructive notice privilege accorded by Section 6323(a), the requirement of adequate and full consideration must be strictly construed. Thus, revised Section 6323(h) (6) modifies the doctrine, oft-repeated in this circuit, that the government has no greater right to property than that accorded the taxpayer. City of New York v. United States, *supra*, Lester v. United States, *supra*, 235 F. Supp. at 119. Whereas Fain may be incapable of recovering the Continental monies under state law, the government's rights are no longer so limited.

With the legal framework thus developed, the government is requested to advise the court of its position in respect to the February 3 payment, to wit:

1) does it dispute that the contract was executed prior to filing of notice, that payment was actually made, or that rights to some part of the Continental proceeds were irrevocably transferred; or

2) does it challenge the exchange for inadequate consideration, e. g. what part of Fain's interest in the "assigned" Continental payments was acquired (if the contingent increases on the 1969 and 1970 instalments were not acquired, summary judgment may be entered for

the government in that amount) ; [8] what was the expected value of the proceeds; what degree of risk of nonpayment, if any, was assumed by the Bank; how does the Bank's expected profit compare with discounted purchases in the normal course of business; or

3) does it contend that the Bank had actual notice of the tax lien so as to make the filing of notice by the government arguably irrelevant. Cf. United States v. Hodes, 355 F.2d 746, 751 (2d Cir. 1966), United States v. Sirico, 247 F.Supp. 421, 422 (S.D.N.Y.1965); or

4) does it contest the legal characterization of the February 3 exchange as a "purchase".

If the government declines to challenge the February 3 payment on any of the above-listed or other relevant grounds, then the ultimate determination of the contest between the Bank and the United States will have to abide an evidentiary hearing directed to whether this transaction constituted a fraudulent transfer under New York law. The government is hereby granted leave to amend its complaint to include such ground for relief, cognizable pursuant to this court's pendent jurisdiction. The lateness of the request to amend is amply explained by the lengthy course of pre-trial discovery and portends no prejudice to the Bank's interests at this stage.

Counsel are hereby requested to appear for a conference in Court Room 2704 on April 8, 1971, at 4:15 p. m. to discuss the questions raised in this interim opinion and to determine the steps precedent to the conclusion of this litigation.

8. See Footnote 4, *supra*.