**AMERICAN INSURANCE COMPANY, Plaintiff,**

v.

**NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Defendant.**

**New York City Health and Hospitals Corporation, Interpleader Plaintiff,**

v.

**Levinson & Santoro Electric Corporation, et al., Interpleader Defendants.**

**No. 99 CIV. 3891(LAP).**

United States District Court, S.D. New York.

July 8, 2003.

Christopher J Sheehy, Eric R Stanco, Westermann, Hamilton & Sheehy, Garden City, NY, for American Ins. Co.

Sung Teak Kim, Michael d Hess Corp. Counsel, New York, NY, for New York City Health and Hospitals corp.

## MEMORANDUM AND ORDER

PRESKA, District Judge.

Interpleader defendant the United States (the "Government") and plaintiff American Insurance Company ("American") have cross-moved for summary judgment in this action concerning funds due Levinson & Santoro Electric Corporation ("L & S") under certain contracts with defendant-interpleader plaintiff New York Health and Hospitals Corporation ("NYHHC"). At issue is whether the Government or American has a priority claim to the interpleader fund.

## BACKGROUND

The following facts are undisputed unless otherwise noted. In March 1987 and April 1994, L & S and certain others executed and re-executed a General Indemnity Agreement (collectively, the "Indemnity Agreements") as a precondition to American's issuance of payment and performance bonds on behalf of L & S in connection with certain construction projects. (American Rule 56.1 Statement ¶ 1). The Indemnity Agreements granted American certain rights including "an assignment of all monies due, or to become due, to L & S in connection with bonded and unbonded projects, as well as a separate security interest in all monies due, or to become due, to L & S in connection with the bonded and unbonded projects." (*Id.* at ¶¶ 2–3). In the fall of 1995, L & S advised American that it needed financial assistance to complete its work under various construction contracts, and as a result, in December 1995, American and L & S entered into an agreement (the "Assistance Agreement"). (*Id.* at ¶¶ 7–8). Under the Assistance Agreement, American "provid-

ed financial assistance to L & S for the completion of various bonded projects...." (*Id.* at ¶ 8). On December 20, 1995, "as part of the consideration to American for the Assistance Agreement," L & S executed certain assignments (the "Assignments") "cumulative with American's existing rights under the [previously entered into] Indemnity Agreements, expressly assigning to American L & S' right to all contract funds in connection with various bonded and unbonded projects." (*Id.* at ¶ 9). Specifically, L & S provided American "with an express assignment of its rights to receive existing or future Contract Funds" for two projects, the Queens Hospital Project and the Bellevue Project. (*Id.* at ¶¶ 10–11). The Assignments, by their express terms, are "irrevocable" and provide that L & S "immediately assigns, transfers and sets over to" American "all right, title and ownership to all contract funds of any nature," whether those funds "are due now or shall, in the future, become due" for the Queens Hospital and Bellevue Projects. (American Rule 56.1 Statement at ¶¶ 13–14, 16–17). American states that in reliance on the Assignments and other agreements, it provided financial assistance to L & S and incurred "losses, costs, fees and expenses in the total amount of $11,741,485.90." (*Id.* at ¶¶ 15, 18–19). The Government disputes the accuracy of this amount, arguing that American only provided financial assistance and/or incurred losses of no more than $7,050.71. (Gov. Response to American's Rule 56.1 Statement ¶¶ 15, 19).

L & S' tax liability for the tax periods ending September 30, 1995 and December 31, 1995 was assessed on March 11, 1996 and May 20, 1996, respectively. (Ex. A to the Declaration of David J. Kennedy,

sworn to on July 30, 2002). On January 16, 1997, the Internal Revenue Service (the "IRS") filed a federal tax lien against L & S in the amount of $753,393.33. (Gov. Rule 56.1 Statement ¶ 1). On March 10, 1997, American served NYHHC with the Assignments. (American Rule 56.1 Statement ¶¶ 20–21). It is undisputed that as of that date, certain funds were due and owing to L & S under the Queens Hospital contract, although the Government disputes that American has proven that any funds were due and owing under the Bellevue Contract[1] and that any funds under either contract remain due and owing L & S. (*Id.* ¶ 22; Gov. Response to American Rule 56.1 Statement ¶¶ 23–25).

American commenced the instant action against NYHHC in 1999 in the Supreme Court of New York, New York County, and the case was subsequently removed to federal court. By notice of motion filed on or about July 31, 2002, the Government moved for summary judgment in the amount of $758,174.73 plus interest from July 8, 2002. American filed its cross-motion for summary judgment on or about August 21, 2002. The Government argues that American does not qualify as either a purchaser or a holder of a security interest and that, therefore, the federal tax lien has a priority claim to the interpleader fund. In support of this argument, the Government points out that American has admitted that it did not file any U.C.C. financing statements with regard to the Assignments, thus defeating any claim that American holds a perfected security interest. In response, American argues that, contrary to the Government's characterization of its position, American does not base its claim on a security interest, but rather on the theory that it owns the monies due

---

1. However, the Government does not dispute that American made demands on NYHHC for payment under both the Queens Hospital and

Bellevue contracts. (Gov. Response to American's Rule 56.1 Statement ¶¶ 26–29).

L & S based upon the Assignments. American argues that under New York law, the Assignments—executed in 1995—made the funds the property of American and that, therefore, the federal tax lien against L & S—filed in 1997—could not attach to the funds.[2] In addition, or alternatively, American argues that it qualifies as a purchaser under 26 U.S.C. § 6323(a) with an interest superior to that of the Government. American also adds a final argument regarding a subrogation claim under Article 3-A of the New York Lien Law for the approximately $7000 it expended on L & S' behalf.

## DISCUSSION

### I. Summary Judgment Standard

"A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 36 (2d Cir.1994); *see* Fed.R.Civ.P. 56(c); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the particular litigation if the substantive law at issue so renders them. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The burden of establishing that no genuine factual dispute exists rests on the party seeking summary judgment. *Chambers*, 43 F.3d at 36. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial," however, "the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995); *accord Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) ("The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case."). The moving party, in other words, does not bear the burden of disproving an essential element of the nonmoving party's claim.

If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P.56(e); *accord Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir.1994). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Instead, the nonmovant must " 'come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely ... on the basis of conjecture or surmise.' " *Trans Sport v. Starter Sportswear*, 964 F.2d 186, 188 (2d Cir.1992) (citation omitted).

On cross-motions for summary judgment, the court applies the same standard as that for individual motions and treats

---

**2.** In support of this argument, American points to a case decided in the Supreme Court of the State of New York, Nassau County, to which the Government was not a party. I agree with the Government that the conclusions reached by the court in that case are irrelevant for purposes of this case.

the facts in the light most favorable to the non-moving party. *See Aviall, Inc. v. Ryder Sys.*, 913 F.Supp. 826, 828 (S.D.N.Y. 1996). "Simply because the parties have cross-moved, and therefore have implicitly agreed that no material issues of fact exist, does not mean that the court must join in that agreement and grant judgment as a matter of the law for one side or the other. The court may conclude that material issues of fact do exist and deny both motions." *Id.* (internal citation omitted). *See also Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993).

## II. Analysis

■ As noted at the outset, resolution of these motions turns on which party has a priority claim to the interpleader fund. Federal law determines the priority of competing liens, governed by the traditional rule of "first in time is first in right." *See United States v. City of New Britain*, 347 U.S. 81, 85–86, 74 S.Ct. 367, 98 L.Ed. 520 (1954); *United States v. Hage*, 417 F.Supp. 74, 76 (N.D.N.Y.1976). As against a federal tax lien, a state lien can take priority only if, in addition to being first in time, it is choate, or fully established, before the federal lien attaches. *See Don King Prods., Inc. v. Thomas*, 945 F.2d 529, 533 (2d Cir.1991) ("A choate lien is one in which the identity of the lienor, the property subject to the lien and the amount of the lien are established."); *United States v. 110–118 Riverside Tenants Corp.*, 886 F.2d 514, 518 (2d Cir.1989); *Hage*, 417 F.Supp. at 76–77. A federal tax lien attaches to "all property and rights to property, whether real or personal," belonging to the taxpayer, here, L & S. 26 U.S.C. § 6321. The nature of the taxpayer's property interest is determined by state law, here the law of the State of New York. Thus, in order to make a determination as to priority, I must first consider when each party's rights to the interpleader fund arose. *See Jaffie Contracting Co. v. Doff*, No. 94 Civ. 2670, 1995 WL 489465, at * —— (S.D.N.Y. Aug. 16, 1995), 1995 U.S. Dist. LEXIS 11765, at *9. A federal tax lien arises at the time of assessment. 26 U.S.C. § 6322. The dates of assessment for L & S' tax liability were March 11, 1996 and May 20, 1996.

■ As stated above, American bases its claim to the interpleader fund primarily on the Assignments it executed with L & S for the Queens Hospital and Bellevue Projects. American argues that the Assignments conveyed L & S' property interest in the funds to American and that, therefore, the federal tax lien could not attach to the funds. I find that the language of the Assignments in this case—providing that L & S "immediately assigns, transfers and sets over to" American "all right, title and ownership to all contract funds of any nature," whether those funds "are due now or shall, in the future, become due" for the Queens Hospital and Bellevue Projects—constituted a complete assignment under New York law of all rights under the Queens Hospital and Bellevue contracts to American because L & S and American "intended a complete and immediate transfer of the interest at the time of the [A]ssignment[s]." *Jaffie Contracting*, 1995 WL 489465, at *3, 1995 U.S. Dist. LEXIS 11765, at *10; *see also Continental Oil Co. v. United States*, 326 F.Supp. 266, 269 (S.D.N.Y.1971). Under the Assignments, American received "a complete transfer of the entire interest of the assignor in the particular subject of assignment, whereby the assignor is divested of all control over the thing assigned." *Continental Oil*, 326 F.Supp. at 269 (quoting 3 N.Y. Juris. Assignments § 28) (quotation marks omitted). It is undisputed that the Assignments were executed in December of 1995, while the IRS did not assess the taxes against L & S until 1996 and file its federal

tax lien until January of 1997. Accordingly, I find that American is entitled to priority because the Assignments effectively transferred L & S' property interest in the funds before the Government's federal tax lien could attach.[3]

 I have also considered American's argument that it qualifies as a "purchaser" under federal law. A federal tax lien imposed by Section 6321 is not valid "as against any purchaser [or] holder of a security interest ... until notice thereof ... has been filed by the Secretary," 26 U.S.C. § 6323(a), and thus, if American qualified as a purchaser, it would be entitled to priority over the federal tax lien. As defined by 26 U.S.C. § 6323(h)(6), a "purchaser" is "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." The requirement of adequate and full consideration is what sets a purchaser apart from a regular assignee and is a matter of federal law. *See United States v. Paladin,* 539 F.Supp. 100, 103 (W.D.N.Y.1982); *see also* 26 C.F.R. 301.6323(h)–1(f)(3) ("the term 'adequate and full consideration in money or money's worth' means a consideration in money or money's worth having a reasonable relationship to the true value of the interest in property acquired"). While American states that it "provided good and valuable consideration for the Assignments, based on the monies advanced by American under the Assistance Agreement exceeding $11,741,485.90," (American Memo. at 12), I find there is insufficient evidence in the record supporting American's claim that it meets the "adequate and full consideration" standard. American

has put in a spreadsheet of payments made on L & S' behalf, (Ex. A to the Declaration of Stacey M. Fleming, sworn to October 17, 2002 ("Fleming Reply Decl.")), and claims that these payments "demonstrat[e] the exchange of adequate and full consideration for the Assignments." (Fleming Reply Decl. at ¶ 4). While the spreadsheet indicates that some payments were made on the date the Assignments were executed, the payments appear to relate to work on the Mt. Sinai Electrical Multipurpose Building, and not for either the Queens or Bellevue Hospital Projects. (Ex. A to Fleming Reply Decl. at 2–3). Accordingly, I find that American has not demonstrated that it qualifies as a purchaser.

Finally, L & S has submitted papers attesting to settlement negotiations between the L & S and the Government, in the apparent hope that the Court will reduce the amount of the federal tax lien. However, L & S takes no position on whether American or the Government should be entitled to a priority claim to the interpleader fund. In response, the Government argues that L & S' submissions should be stricken from the docket as violating Fed.R.Evid. 408. Having found that American has a priority claim to the interpleader fund, I decline to make a finding on this issue.

## CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment is denied. American's motion for summary judgment is granted to the extent that I find American is entitled to a priority claim to the interpleader fund. Counsel shall confer and inform the Court by letter

---

**3.** Because I find that American is entitled to a priority claim to the interpleader fund, I decline consideration of American's subrogation claim pursuant to Article 3–A of the New York Lien Law.

no later than July 14, 2003 of the steps necessary to resolve the action.

SO ORDERED.