GEORGE J. STATHOS et al., Plaintiffs, *v.* WILLIAM F. MURPHY, SR., et al., Defendants, and VICTORIA STATHOS, Appellant, and SEAWAYS SHIPPING CORP. et al., Judgment-Creditors-Respondents.

First Department, December 20, 1966.

*Stephen Lee Crystal* of counsel (*Bernstein & Crystal,* attorneys), for appellant.

*Donald F. Mooney* for respondents.

BREITEL, J. P. The issue is whether an assignee of an interest in a lawsuit is entitled to recover the allocable proceeds of a settlement as against a judgment creditor of the assignor whose judgment was recovered and whose restraining notice was served subsequent to the assignment but before the settlement of the lawsuit. Although the issue is one that has arisen with some frequency in the past, the application of the rule has been surrounded with some confusion.

In the instant case, Special Term, after a reference and hearings before the Special Referee, held that the judgment creditor was entitled to prevail, presumably adopting the view of the Special Referee that the assignment related to subsequently acquired property and therefore could not take effect until the settlement moneys were in hand. By that time, of course, he reasoned, the lien of the judgment creditor had taken preemptive effect. It is concluded, however, that the correct view is that the assignment took immediate effect with respect to an existing cause of action and that therefore the rules peculiar to after-acquired property are not applicable. In consequence, the judgment of Special Term should be modified to allow the assignee's claim and to disallow that of the judgment creditor.

The confusion in this area of the law arises primarily from a failure to distinguish between the assignment of future rights, such as future wages, revenues on contracts yet to be made, and the like, regarded as after-acquired property, and the assignment of present rights, typically choses in action, which have yet to ripen into deliverable assets, particularly money. While there may be many practical contingencies or even conditions stipulated in the realization of choses in action, such contingencies or

conditions alone do not negate the fact that a present right exists and is being effectively transferred. A further distinction should be kept in mind between the assignment of a cause of action, an interest in a lawsuit, or a chose in action, however termed, and an assignment of the proceeds or a share of the proceeds of a judgment or settlement to be obtained in the future. This, of course, is the difference between a present transfer and a transfer to take effect in the future. If the authorities are analyzed within a proper classification they are largely reconcilable in result if not always in their *rationes decidendi.*

The first question in this case, then, is the nature of what was purportedly assigned.

George Stathos, one of the plaintiffs and the assignor, instituted this action in March, 1958 to recover corporate stock and money. In June, 1964 the action was settled for $65,000 to be paid to specified persons as their interests might appear. At issue in this present appeal is the share allocable to George Stathos of $13,665.50 claimed by his judgment creditors, Seaways Shipping Corp. and Rio Palmea Compania Naviera, S. A. At Special Term it was also claimed by the coplaintiff Kirkiles to the extent of $8,601.25 by virtue of an agreement with Stathos, and by Victoria Stathos, the mother and assignee of George Stathos, to the extent of $5,065.25.[1] On the appeal, there remains only the assertion of the assignee's claim in the full sum of $13,665.50, the Kirkiles' claim having been disallowed.

The assignment to Victoria Stathos was dated May 25, 1959 and the Special Referee found: " The credible proof shows that at the time this assignment was made, Stathos was indebted to his mother for at least $30,000. Victoria Stathos' uncontroverted testimony establishes that her son *owed* her this sum of money * * * Nothing in the record warrants the conclusion that any of the loans made by her to her son were ever intended as gifts * * * On the contrary, it clearly appears that the assignment was made by Stathos for good and valuable consideration, in an amount perhaps exceeding this sum of $30,000." (Emphasis in original.)

The Special Referee also found that Stathos was not insolvent in 1959 when he executed the assignment. Most important, the judgment creditors explicitly acknowledged in this court that they did not contest the findings of the Special Referee. Consequently, there is no suggestion of fraud or like invalidity in the assignment.

---

1. These are the amounts asserted although the arithmetic is deficient.

The assignment in usual form purported to "grant, assign and convey * * * all my right, title and interest in the cause of action now pending * * * entitled * * * wherein I [Stathos] am plaintiff." The cause of action was in contract for breach of divers written and oral agreements involving stock in a shipowning corporation, sale and resale of a ship, and the disposition of the proceeds from the resale of the ship. The settlement of the underlying action had occurred during trial. The judgment against Stathos in favor of his judgment creditors was returned on September 20, 1962 and execution returned unsatisfied in November of that year. The judgment creditors served a restraining notice under their judgment sometime after the settlement in 1964 but, of course, before the moneys were received or ready to be distributed.

From the foregoing recital it is evident that the subject of the assignment was a fully matured claim for breach of contract. No future interest or "after-acquired" property was involved. The claim, of course, was quite uncertain as to realization because it was disputed and being seriously litigated. Indeed, the eventual amount of the settlement was a fraction of the pleading claims of $869,800 and $376,500. Notably, the assignment was of the cause of action and not of an interest in a future judgment or fund.

The next question is whether the assignment in this case took effect instantly or matured as a transfer only after the proceeds of the settlement were at hand.

There is no doubt that the assignment of a truly future claim or interest does not work a present transfer of property. It does not because it cannot; no property yet exists. However, equity has long recognized such a purported transfer as an agreement or promise to transfer when the capacity to transfer arises — hence, one form of the equitable assignment enforcible in equity with the inchoate right receiving no or only limited recognition at law. Quite different is the assignment of a present claim not yet matured, or disputed, or dependent upon future conditions. There has never been any doubt that such an assignment was one of a presently-existing interest. Difficulty only arose because there might not be an immediate action at law available to enforce the claim, and the unmatured claim would be the best example. However, even in such case, while law and equity were still separated, equity would provide whatever recognition or protection was necessary, but always considering the transfer as one of a present interest. But, for the purposes of this case, an existing right was transferred for which there was a pending mode of enforcement and the assignor lost the

power to transfer to another or to create rights in his creditors pre-empting those of the assignee. And, of course, the problems engendered by the separation of law and equity should no longer plague us. (*Lane v. Mercury Record Corp.*, 21 A D 2d 602, esp. 603, affd. 18 N Y 2d 889.). (As to assignment of rights in existing claims and of rights in claims to arise in the future, see Restatement, Contracts, §§ 149, 150, 151, 154; as to assignment of conditional rights, see *ibid.*, § 155. The New York Annotations to the Restatement, citing the decisional authorities, state that the Restatement is in accord with New York law. See 3 N. Y. Jur., Assignments, §§ 20, 70.)

In this State *Williams* v. *Ingersoll* (89 N. Y. 508, 518–520) is the leading case. It expresses the rules as they had been developed during the separation of law and equity. Moreover, the case involved an assignment of damages for a personal tort, and consequently its application to the assignment of other than personal injury claims is a fortiori. It involved, therefore, an assignment which might not be effected at law but still would be recognized to an extent in equity.[2] Nevertheless, the court held flatly (p. 520) that even in that case the assignment would attach to the judgment recovered, once it was recovered, and be valid and prior as against attaching creditors. The rule in the *Williams* case has not changed over the years (see, generally, 3 N. Y. Jur., Assignments, § 70, and cases cited). In all this analysis, the nonassignable personal tort claim must be distinguished from other kinds of intangible property assigned, despite the breadth of the holding in the *Williams* case. This is because the nonassignability of the cause of action has prompted some courts, in order to save the assignment and not to destroy it, to hold that the assignment does not take effect until the judgment is recovered or the money is at hand (see, e.g., *Matter of Cordaro* v. *Cordaro*, 18 A D 2d 774, affd. 13 N Y 2d 697; cf. 3 N. Y. Jur., Assignments, § 17; see, also, however, *Grossman* v. *Schlosser*, 19 A D 2d 893, noting the distinction and criticizing the logic of the *Williams* case insofar as it held as it did as to nonassignable tort claims, but following it nevertheless).

The *Williams* case has been followed with respect to assignments of personal injury claims, and, of course, in the a fortiori instance of other kinds of assignments through the years (*Grossman* v. *Schlosser, supra; Matter of Neilson Realty Corp.* v. *M.V.A.I.C.*, 47 Misc 2d 260, 263–264; *Matter of City of New York* v. *Clouse*, 197 Misc. 154, 156; *Manufacturers Trust Co.* v.

---

2. As to nonassignability of personal injury claims, see General Obligations Law, § 13–101, the successor to Personal Property Law, § 41.

*Shapiro,* 82 N. Y. S. 2d 250 [Sup. Ct., N. Y. County, HOFSTADTER, J.]; *Reddy* v. *Zurich Gen. Acc. & Liab. Ins. Co.,* 171 Misc. 69, 71–72; *Brooksville Granite Co.* v. *Latty,* 83 Misc. 384, 387). The rule is in accord with the Restatement, as already observed. It is also in harmony with the general doctrine upon which the text writers are agreed (4 Pomeroy, Equity Jurisprudence [5th ed.], §§ 1283, 1290, 1291; 4 Corbin, Contracts, §§ 886, 903; 3 Williston, Contracts [3d ed.], §§ 410, 412, 413, 434). A problem arises, however, because some precedents seem to point in another direction although neither they nor any other in the Court of Appeals have overruled the *Williams* case or the general doctrine upon which it depends.

Two such precedents were relied on by the Special Referee in this case. The first is *Matter of City of New York* v. *Bedford Bar & Grill* (2 N Y 2d 429). That case involved the rights of the levying city tax collector against a prior security assignment to a bank of the future contingent refund on a liquor license deposit. The court discussed liquor license refunds rather narrowly, citing a line of authorities in lower courts which had held consistently that such an assignment was only of a future interest which could not become choate until and if the fund had come into existence, and that intervening creditors' liens would attach first. The court then emphasized the narrow base for its reasoning by calling attention to legislative efforts to give effect to such particular assignments and the refusal of the Legislature to enact the bills, or if passed, to receive the approval of the Governor. However, its distinction of *Matter of Capitol Distrs. Corp.* v. *2131 Eighth Ave.* (1 N Y 2d 842) is most interesting and helpful. The assignment in that case had been upheld against a judgment creditor and the *Bedford Bar* court explained that this had been because the *Capitol* assignment had been of a present interest for a present consideration and not of a future fund. The *Bedford* case, then, certainly does not have the broad sweep sometimes attributed to it.[3]

The second case relied on by the Special Referee is that of *Matter of Gruner* (295 N. Y. 510, rehearing den. 296 N. Y. 668). Involved was a purported present assignment of a Stock Exchange seat but the writing went on to state, in terms of futurity, that the intent was to assign the " proceeds of said membership and seat " (p. 515). Quite important and revealing is it that under the rules of the Stock Exchange the membership was not assignable to a nonmember, so that the security assignment to a bank in the *Gruner* case might not have recognition as

---

3. E.g., as in *Matter of Cordaro* v. *Cordaro* (*supra*).

a present transfer of a property interest. On these pivotal facts the court found, in accordance with the rules described above, that there could be no present transfer, but there could and was a transfer of future proceeds as they might or would arise (p. 518). The court held that the assignment created an inchoate equitable lien which became perfected when the proceeds of the sale of the seat were received. Consequently, claims attaching to the underlying asset prior to such receipt of proceeds took precedence. But, and this is critical to an understanding of the case, it was the Federal claim, not lien, for taxes under the particular language of the Federal statutes which was given priority (pp. 520-521). On the other hand, the State lien was held to be subsequent to that of the assignee, although the State lien like the claim of the Federal Government was for past income taxes (pp. 522-525). This is striking support for the rule in the *Williams* case which extended priority even to an equitable lien limited to taking effect in the future.

The nonassignability aspect of the *Gruner* case offers an interesting parallel for *Matter of Cordaro* v. *Cordaro* (18 A D 2d 774, affd. 13 N Y 2d 697, *supra*) and *Grossman* v. *Schlosser* (19 A D 2d 893, *supra*), each of which considered assignable " proceeds " of nonassignable personal injury tort claims.

It is evident then that the *Bedford Bar* and *Gruner* cases are easily reconciled with the prevailing rules. Each involved a special application: the one to a liquor license refund subject to a narrow public policy and a particularized legislative history with a holding of limited expression, and the other to a nonassignable interest coupled with express language looking to future proceeds. For completeness, however, it should be noted that there are some lower court cases which fall back upon ancient and now largely discredited distinctions between law and equity (e.g., *Matter of Woods,* 144 N. Y. S. 2d 880, 883-884 [Surr. Ct., Westchester County]; *Richard* v. *National Transp. Co.,* 158 Misc. 324, 329 [Mun. Ct. of N. Y. C.]; cf. *Reddy* v. *Zurich Gen. Acc. & Liab. Ins. Co.,* 171 Misc. 69, 71, *supra*; *Matter of Modell,* 71 F. 2d 148, 149).

Consequently, none of the difficulties present in cases which refused to extend priority to assignments as against subsequent judgment creditors are involved in this case.[4] Mrs. Stathos was

---

4. In order not to revive the old confusion, or to assume that it is completely resolved away, it should be observed that there still remains a potential for difficulty in the precedents however irrelevant it is to this case. That potential for difficulty is limited to assignments of personal injury claims (cf. *Matter of Cordaro* v. *Cordaro,* 18 A D 2d 774, affd. 13 N Y 2d 697, *supra* with *Williams* v. *Ingersoll,* 89 N. Y. 508, *supra* and *Grossman* v. *Schlosser,* 19 A D 2d 893, *supra*).

the assignee of a present interest in an existing chose in action, based on contract, and uninhibited by rule of decision or statute limiting its assignability for reasons resting in public policy. The Stathos assignment was even an unconditional chose in action, contingent only on the practical burdens and risks of proof and enforcement of the underlying claim.

Accordingly, the judgment should be modified, on the law and on the facts, to allow claimant-appellant her full claim to the proceeds to which her assignor was entitled and disallowing the claims of claimants-respondents, with costs and disbursements to claimant-appellant against claimants-respondents.

RABIN, McNALLY, CAPOZZOLI and WITMER, JJ., concur.

Judgment unanimously modified, on the law and on the facts, to allow claimant-appellant's full claim to the proceeds to which her assignor was entitled and disallowing the claims of claimants-respondents, with $50 costs and disbursements to claimant-appellant against claimants-respondents.

Settle order on notice.