**In the Matter of LAW RESEARCH SERVICE, INC., Appellant,**

**v.**

**MARTIN LUTZ APPELLATE PRINT-ERS, INC., Appellee.**

**No. 436, Docket 73-2113.**

United States Court of Appeals, Second Circuit.

Submitted Jan. 23, 1974.

Decided May 2, 1974.

Jane Compton Hammett, New York City, for appellant.

David M. Ettinger, New York City, for appellee.

Before HAYS, MANSFIELD and OAKES, Circuit Judges.

MANSFIELD, Circuit Judge:

Law Research Service, Inc. ("Law Research") appeals from a decision of Judge Sylvester J. Ryan affirming Referee in Bankruptcy Herzog's allowance of certain secured claims of Martin Lutz Appellate Printers, Inc. ("Lutz") against the assets of Law Research. We affirm.

On June 19, 1971, Law Research filed a petition pursuant to Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–799, for an arrangement with its unsecured creditors. Thereafter Lutz filed with the bankruptcy court two secured claims amounting to approximately $20,000 for services rendered in printing a brief and record for Law Research in connection with an appeal taken by The Western Union Telegraph Company in the Supreme Court of the State of New York from a judgment in excess of a million dollars against it in favor of Law Research. In order to secure payment for the printing work Law Research assigned to Lutz a part of the judgment. The assignment, which was executed on

February 1, 1971, but not filed until May 5, 1971, forms the basis for Lutz's claim that it is a secured creditor.[1]

Law Research sought before the Referee to defeat Lutz's claims on two grounds: (1) that the charges for the printing services were excessive; and (2) that since the assignment was not perfected until May 5, 1971, a date well within the four-month period preceding bankruptcy, it was voidable as a preferential transfer under § 60 of the Bankruptcy Act, 11 U.S.C. § 96. The Referee rejected both arguments, and we think correctly so. The first contention is frivolous. The amount of the charges is supported by ample evidence. The debtor's second claim, though it too must fail, requires some discussion.

Law Research advances two theories in support of its contention that the assignment operated as a voidable preferential transfer. First, it suggests that there was no "perfectable" transfer at the time of the assignment because the funds underlying the judgment had yet to be identified and the judgment, being on appeal, was subject to reversal.[2] Alternatively, it argues that the judgment was not in fact perfected until May, 1971, within four months of bankruptcy. We find both arguments wanting.

On the first score, the debtor confuses the law relating to assignment of present rights or interests with that relating to assignment of future rights or interests. Under New York law, which controls on the question of perfection under § 60 of the Bankruptcy Act, see In re Morasco, 233 F.2d 11 (2d Cir. 1956), the assignment of an existing right creates an immediate lien in favor of the assignee that is valid against later lien creditors of the assignor. Stathos v. Murphy, 26 A.D.2d 500, 276 N. Y.S.2d 727 (1st Dept.1966) (Breitel, J.), affd., 19 N.Y.2d 883, 281 N.Y.S.2d 81,

---

1. In December 1971 Law Research entered into a settlement with Western Union. Lutz seeks to enforce its claim against the proceeds of that settlement.

2. The theme of this argument is not unlike that of N.Y.U.C.C. § 9–204, which provides

that a security interest cannot attach until the debtor has rights in the collateral. If the assignment of a judgment were covered by the U.C.C. (see § 9–104(h)), however, we would be confident that Law Research had such rights in the judgment as to meet the test of § 9–204.

227 N.E.2d 880 (1967). The assignment of a future right, on the other hand, creates a lien that attaches only at such time as the right accrues. See, e. g., Okin v. Isaac Goldman Co., 79 F.2d 317, 319 (2d Cir. 1935).[3] Concededly the courts have encountered some difficulty in defining the contours of a future right or interest for purposes of assignment law.[4] But whatever ambiguities there may be, it is clear that the assignment of an existing judgment is of a present, not a future, interest. See Stathos v. Murphy, *supra*.

■ Nor does In re Modell, 71 F.2d 148 (2d Cir. 1934), relied upon by Law Research, support its argument to the contrary. Modell involved the assignment of an interest in "any verdict, decision, judgment or proceeds thereof" which the assignor *might* recover in a pending suit. When two years later a judgment was entered and a formal assignment made (within four months of the assignor's bankruptcy), the assignee maintained that his lien should relate back to the initial assignment. The claim was properly rejected. We ruled that the first purported assignment was merely an agreement to assign a judgment which *might* be acquired in the future and which, as it turned out, was not entered until after the four-month period preceding bankruptcy had commenced. Later in Okin v. Isaac Goldman Co., *supra*, we confirmed that *Modell* turned on the absence of any existing judgment at the time of the purported assignment.[5] But when, as in the present case, an assignment is of an existing judgment, it creates a lien in favor of the assignee at the time of its execution.[6]

---

3. For security interests covered by the U.C. C. this concept has of course been codified in § 9–204(1), which provides:

"A security interest cannot attach until there is agreement (subsection (3) of Section 1–201) that it attach and value is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching."

4. The earliest and certainly purest form of the future assignment can be found in Field v. City of New York, 6 N.Y. 179 (1852), where the assignor assigned moneys he expected to earn under a contract he expected to enter. The court, while recognizing that the assignment could not operate to pass a present claim, concluded that the assignment " . . . did, nevertheless, create an equity, which would seize upon those claims as they should arise. . . . " Because this "equitable" lien would not attach until the claim actually arose, intervening lien creditors could acquire a position superior to the assignee.

A similar rule has been applied in cases dealing with a pledge of chattels to be acquired in the future, e. g., Titusville Iron Co. v. City of New York, 207 N.Y. 203, 100 N.E. 806 (1912), and an assignment of a future refund on a liquor license deposit, e. g., City of New York v. Bedford Bar & Grill, 2 N.Y.2d 429, 161 N.Y.S.2d 67, 141 N.E.2d 575 (1957). On the other hand, we have declined to extend the same treatment to the assignment of a mere expectancy in an estate. See, e. g., In re Barnett, 124 F.2d 1005, 1008 (2d Cir. 1942) ("It is not our duty, of course, to explain why the New York courts distinguish between the validity of mortgages and pledges of after-acquired property, and assignments of expectancies."). The vagaries in the development and application of the law of assignment of future rights and interests have led one court to the frank admission that the cases cannot all be reconciled. Stathos v. Murphy, *supra*.

5. "[I]n that decision [*Modell*] the assignment which purported to cover the right, title, and interest of the assignor in any 'judgment or proceeds thereof' which the latter might recover in a pending action for malicious prosecution did not operate upon the judgment until within the four months' period, for only within that period was the judgment entered." Okin v. Isaac Goldman Co., *supra*, 79 F.2d at 319–320.

6. The continuing force of the *Modell* decision as it relates to the assignment of an *expected* judgment or recovery may even be doubted. The *Stathos* court characterized the *Modell* decision as one resting on ancient and largely discredited distinctions between law and equity. 26 A.D.2d at 506, 276 N.Y. S.2d at 733. According to *Stathos* the better view is that the assignment of personal injury claims and, *a fortiori*, contract claims is effective to create a present lien in the assignee. 26 A.D.2d at 504–506, 276 N.Y.S. 2d at 731–733.

■ That the judgment was on appeal and thus subject to reversal or modification does not affect this result. N. Y. General Obligations Law § 13–103, which authorizes the assignment of judgments, clearly envisions that such assignments may take place before the appellate process has run its course. Under .this section the assignment of a judgment operates as a transfer of the present right to the judgment, subject though it may be to defeasance on appeal, and of the residual right to the un-derlying cause of action in the event of a reversal or vacation of the judgment. Indeed, we have given effect to assignments of an even more conditional nature, holding in Rockmore v. Lehman, 129 F.2d 892 (2d Cir. 1942) (construing New York law), cert. denied, 317 U.S. 700, 63 S.Ct. 525, 87 L.Ed. 559 (1943), that the assignment of monies to become due under the contract created a present lien even though the rights were contingent on performance by both of the contracting parties. And in In re Barnett, 124 F.2d 1005 (2d Cir. 1942), we found that the assignment by a daughter of her testate or intestate interest in her father's estate during her father's lifetime created a lien as of the date of its execution. A fortiori the assignment of the existing judgment by Law Research created a lien in favor of Lutz as of the date of the assignment's execution.

The assignment of Law Research's interest in the judgment, though valid when executed on February 1, 1971, was not filed by Lutz until May 5, 1971. If, as Law Research maintains, filing was necessary to perfect Lutz's interest in the judgment, the failure to file until within four months of bankruptcy would render the assignment a preference under § 60 of the Bankruptcy Act. The Referee declined to hold the assignment preferential, finding that the delay in filing did not stem from any negligence or fault on the part of the assignee. Indeed, Lutz apparently attempted to file its assignment shortly after its execution, but for reasons that are not entirely clear the clerk refused to accept it for filing.[7] The Referee concluded that the clerk had refused the Lutz assignment because there was already on file a purported assignment of the entire judgment to another creditor.[8] Since Lutz had made a good faith effort to file the assignment the Referee concluded that it would be inequitable under the circumstances not to relate the May 5th filing of the assignment back to the date when it was first offered for filing, i. e., in early February.

There is support for the Referee's decision that the filing should be deemed effective as of the earlier date. N.Y.U. C.C. § 9–403[9] provides that presentation of a filing statement constitutes filing. Furthermore, in construing the predecessors of § 9–402, we have held that when a clerk improperly refuses to accept a document tendered for filing, filing will nonetheless be deemed to have been effected. See, e. g., In re Mutual Board & Packaging Corp., 342 F.2d 294 (2d Cir. 1965). However, we need not remand for further facts as to the clerk's rejection in the present case or plumb the effect of the attempted filing for we hold that filing was not in any event necessary to perfect the assignment of the judgment.

---

7. It is likewise unclear what change in circumstances prompted the clerk to accept the Lutz filing in May.

8. The president of Law Research testified that he had given an earlier assignment in blank to Joseph S. Herbert & Co. and that, although the assignment was to have been in payment of a $10,000 debt owed by Law Research to Herbert & Co., the latter filled in the full amount of the judgment in the blank assignment. The Referee, however, did not credit portions of the testimony given by the witness.

9. "§ 9–403. What Constitutes Filing; Duration of Filing; Effect of Lapsed Filing; Duties of Filing Officer
"(1) Presentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing officer constitutes filing under this Article."

■■ N.Y.U.C.C. § 9–104(h) [10] specifically excludes a right represented by a judgment from Article 9 of the Uniform Commercial Code. Thus, as was noted in the Practice Commentary accompanying Article 9, we are left without any statutory law governing perfection of assignments of judgments. Under such circumstances the pre-Code law continues to govern. See 1 G. Gilmore, Security Interests in Personal Property § 10.7 (1965). Under the pre-Code law filing was not necessary for the perfection of an assignment of a judgment or claim. See Malone v. Bolstein, 151 F. Supp. 544, 547 (N.D.N.Y.1956), affd., 244 F.2d 954 (2d Cir. 1957) (construing N.Y. Personal Property Law § 41, from which N.Y. General Obligations Law § 13–103 was derived), and Rockmore v. Lehman, *supra*. The present section authorizing the assignment of judgments, General Obligations Law § 13–103, likewise contains no filing requirement.

■ Law Research's reliance upon N.Y.C.P.L.R. § 5019(c) [11] as supporting its contention that an assignment of a judgment must be filed in order to be perfected, is misplaced. It is true that § 5019, which deals generally with corrections and amendments of judgments, provides that the assignee of a judgment shall file a copy of the assignment in the County Clerk's office. However, we agree with the Referee that the section is clearly intended for the benefit of the assignee, being designed to protect him against payment of the judgment to the

wrong party[12] and not as a means of providing notice to third-party creditors. See Boyd v. Buffalo Steam Roller Co., 87 Misc. 20, 149 N.Y.S. 1050 (Co.Ct. 1914), affd., 167 App.Div. 959, 152 N.Y. S. 1099 (4th Dept.1915).

We conclude that the assignment of the judgment against Western Union was perfected as of the date of its execution in early February and therefore falls outside the four-month period preceding bankruptcy.

The decision of the district court is affirmed.

---

10. "§ 9–104. *Transactions Excluded From Article*
"This Article does not apply
\* \* \* \* \*
"(h) to a right represented by a judgment . . . ."

11. "§ 5019. *Validity and correction of judgment or order; amendment of docket*
\* \* \* \* \*
"A person other than the party recovering a judgment who becomes entitled to enforce it, shall file in the office of the clerk of the court in which the judgment was entered or, in the case of a judgment of a court other than the supreme, county or a family court which has been docketed by the clerk of the county in which it was

entered, in the office of such county clerk, a copy of the instrument on which his authority is based, acknowledged in the form required to entitle a deed to be recorded, or, if his authority is based on a court order, a certified copy of the order. Upon such filing the clerk shall make an appropriate entry on his docket of the judgment."

12. Filing under § 5019(c) also serves to assist the assignee in directly enforcing the judgment against the judgment debtor. With his right to the judgment a matter of court record, the assignee himself can invoke the court's process against the judgment debtor. See, e. g., N.Y.C.P.L.R. § 5225(a).