[No. 12773-3-II. Division Two. September 10, 1990.]

PARKER ROOFING COMPANY, *Appellant,* v. PACIFIC FIRST FEDERAL SAVINGS BANK, ET AL, *Respondents.*

*Kathleen Henry* and *Short, Cressman & Burgess,* for appellant.

*Robert L. Wilson* and *Karr Tuttle Campbell,* for respondent Pacific First Federal Savings Bank.

*John Abolofia* and *Abolofia & Hershman,* for respondent Escure & Abolofia, P.S.

*Andrea Conklin* and *Davies Pearson, P.C.,* for respondent Davies Pearson, P.C.

WILLIAMS, J.*—The parties, Parker Roofing Company, Pacific First Federal Savings Bank, Escure & Abolofia, P.S.,[1] and Davies Pearson, P.C., ask us to decide the parties' priorities in the judgment proceeds of another case, Raven Materials, Inc. v. Celotex Corporation. The parties' priorities depend upon whether, as a matter of law, Pacific First could have taken a security interest in an after–acquired lawsuit. We hold that Pacific First could have taken such an interest, and that Pacific First had a perfected security interest in the judgment proceeds, and affirm.

Raven sued the Celotex Corporation for breach of contract, and obtained a judgment for $92,995 on January 16, 1987. After losing an appeal, Celotex paid $123,517.99 into the registry of the court. It is these funds for which the parties contend.

Pacific First's claim to the funds is based on a financing statement filed September 14, 1984, that noted that First Security Bank had assigned its interest to Pacific First. The financing statement covered the following:

> all of Borrower's accounts, chattel paper, documents, instruments, general intangibles and leases and leasehold interests, now existing or hereafter arising, and in all proceeds thereof.

The security agreement from August 30, 1984, listed the following:

---

*This appeal was heard by a Court of Appeals Judge, together with a retired Supreme Court Justice and a retired Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division Two.

[1]Escure & Abolofia represented Raven in the suit against Celotex, and claimed $42,623.46 as attorney's fees. Escure & Abolofia is not participating in the appeal because both Parker and Pacific First agree that the firm should be paid, and even if Davies Pearson prevails Escure & Abolofia will be paid in full because of the small amount Davies Pearson claims.

Accounts, contract rights, chattel paper, general intangibles, instruments or other rights to payment now or hereafter owned or held by the debtor. Any and all federal, state, county, or city tax refunds, any governmental refunds or receivables of any nature whatsoever, now in existence or hereafter arising.

Parker's claim is based on a suit against Raven and its owners, Steve and Pam Yonich, for failure to repay a loan and fraudulently obtaining that loan. The court awarded Parker a judgment of $117,891.31 plus interest, $100,000 punitive damages (under California law), and attorney's fees and costs on July 17, 1987.

On January 14, 1987, Raven granted Parker a security interest in the cause of action against Celotex. The security agreement included a clause that the security agreement would not impair Escure & Abolofia's attorney's fees from the judgment, and noted that an assignment of approximately $8,200 had been given to Davies Pearson. Parker then filed a financing statement and security agreement with the Department of Licensing on January 21, 1987. The financing statement covered all of Raven's interest in the lawsuit.

Davies Pearson claimed $8,940.02 plus interest of $3,734.23, for a total of $12,674.25. On September 23, 1986, Davies Pearson filed a notice of attorney's lien for $2,546.96 on the action against Celotex. Then on December 9, 1986, the firm filed a partial assignment of judgment dated November 25, 1986.

After a motion for disbursal of funds, the court below ruled that Pacific First had a security interest in the proceeds and ordered the clerk of the court to disburse $80,894.53 to Pacific First and $42,623.46 to Escure & Abolofia. Parker appealed the order, and Davies Pearson cross–appealed.

## I
### SECURED TRANSACTIONS

The primary question is whether after–acquired property clauses in a security agreement and a financing statement may be held to include a cause of action that was not yet

contemplated when those documents were executed, nor when the financing statement was filed.

In analyzing any secured transaction, we must remember the basics: A security interest is perfected when it has attached and, with respect to general intangibles,[2] when a financing statement is filed. RCW 62A.9–303(1); RCW 62A.9–302. The security interest attaches when the debtor has signed a security agreement that contains a description of the collateral, value has been given,[3] and the debtor has rights in the collateral. RCW 62A.9–203(1). The financing statement must contain, *inter alia,* a description of the type of collateral. RCW 62A.9–402(1). Assuming all other steps had been taken to perfect the security interest, the security interest is perfected when it attaches. RCW 62A.9–303(1). When two secured creditors are contending for the same property, priority goes to the first to file or perfect. RCW 62A.9–312(5). An unperfected security interest is subordinate to the rights of a lien creditor. RCW 62A.9–301. By negative implication, a perfected security interest has priority over a subsequent lien. *See* RCW 62A.9–301; RCW 62A.9–201.

Security agreements are subject to the same rules of construction as are other contracts. 69 Am. Jur. 2d *Secured Transactions* § 273 (1973); *see also* RCW 62A.9–103. Thus, the intent of the security agreement is interpreted as a matter of law. *See Kelly v. Aetna Cas. & Sur. Co.,* 100 Wn.2d 401, 407, 670 P.2d 267 (1983) (interpretation of contracts is a question of law). The determination of what is covered by the financing statement requires interpretation of the U.C.C. statute, which is also a question of law. *See Condit v. Lewis Refrigeration Co.,* 101 Wn.2d 106, 110, 676 P.2d 466 (1984).

---

[2]The parties do not disagree that a pending lawsuit is a "general intangible" for the purposes of RCW 62A.9–106. *See also Friedman, Lobe & Block v. C.L.W. Corp.,* 9 Wn. App. 319, 322, 512 P.2d 769 (1973).

[3]From the record, the value given cannot be ascertained, but the parties do not dispute that value was given by Pacific First.

The security agreement is an agreement between the debtor and the lender that certain property will stand as collateral for the loan. The security agreement also provides protection to third parties that are considering lending to the debtor and to third parties that are collecting on debts owed by the debtor. The written security agreement protects the other creditors from collusion between the debtor and a particular creditor. 2 J. White & R. Summers, *Uniform Commercial Code* 298–99 (3d ed. 1988).

The financing statement is designed to give potential lenders notice that a security agreement may exist and tell them where to look if more information is needed. 2 J. White & R. Summers, *Uniform Commercial Code* 369 (3d ed. 1988); *In re Certified Packaging, Inc.*, 8 U.C.C. Rep. Serv. 95, 101 (Bankr. Utah 1970); *In re Boogie Enters., Inc.*, 79 Bankr. 4, 7 (C.D. Cal. 1987).

Parker first argues that Pacific First did not have a perfected security interest in the judgment proceeds of the Celotex case because the security agreement, executed in August 1984, could not validly assign a security interest in a cause of action that did not then exist. The issue of whether a security agreement (and a financing statement) could have contemplated a future cause of action, as a question of law, is reviewed de novo. *See Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988), *aff'd on rehearing*, 113 Wn.2d 148, 776 P.2d 963 (1989).

Parker, citing *Capital Nat'l Bank of N.Y. v. McDonald's Corp.*, 625 F. Supp. 874 (S.D.N.Y. 1986), argues that a security agreement cannot grant a security interest in a future cause of action. Parker's argument raises three questions: first, as a matter of law, could the parties have covered a future cause of action even if they wanted to? Second, does the security agreement show an intent to cover future causes of action? Third, did the financing statement give fair warning to others that future causes of action would be covered?

A. *May parties agree that future causes of action will be covered by a security agreement?*

 As Parker asserts, *Capital Nat'l Bank* stands for the proposition that a security agreement cannot cover future causes of action. However, the reasoning of the case is unpersuasive. The case is based on the analysis that, because the cause of action did not exist at the time of the security agreement, the parties could not have intended an assignment or a security interest. *Capital Nat'l Bank,* 625 F. Supp. at 879 n.6. It is certainly true that Raven and Pacific First could not have intended to cover the particular cause of action, because they had no knowledge of the breach by Celotex when they executed the security agreement. The parties could, however, have intended to cover future causes of action as a class, because both parties could have known that Raven might acquire causes of action in the future.

The reasoning of the case is also flawed by its reliance on *Stathos v. Murphy,* 26 A.D.2d 500, 276 N.Y.S.2d 727 (1966), *aff'd,* 19 N.Y.2d 704, 225 N.E.2d 578, 278 N.Y.S.2d 894 (1967). *Capital Nat'l Bank,* citing *Stathos,* found that one can only assign a chose in action that is sufficiently choate. *Capital Nat'l Bank,* 625 F. Supp. at 879. *Stathos,* in turn, had stated in dictum that there cannot be an assignment of a truly future claim, because that claim does not yet exist. *Stathos,* 276 N.Y.S.2d at 730. This is an example of the reasoning the U.C.C. after–acquired property provisions rejected. *See In re Duke Roofing Co.,* 47 Bankr. 990, 992 (E.D. Mich. 1985) ("The law's problem in recognizing assignment of future intangibles is of a metaphysical nature: *qui non habet, ille non dat,* or one cannot transfer title to property he does not own.").

Courts have held that a security agreement may encompass after–acquired general intangibles. Thus, in *Certified Packaging,* 8 U.C.C. Rep. Serv. at 99, the court held that a security agreement was sufficient to cover a cause of action

(tax refund claim) that later came into existence. *See also In re Sunberg,* 35 Bankr. 777 (Bankr. S.D. Iowa 1983) (omnibus clause covering after–acquired property included payment–in–kind (PIK) moneys from program instituted after filing); *In re Kendrick & King Lumber, Inc.,* 14 Bankr. 764 (Bankr. W.D. Okla. 1981) (financing statement filed in 1977 covering after–acquired general intangibles was sufficient to include income tax refunds from amended filing in 1981). Other courts, without penetrating analysis, have allowed the security agreement to cover after-acquired lawsuits. *See In re Hanson Indus., Inc.,* 88 Bankr. 942, 944 n.1 (Bankr. D. Minn. 1988); *Boogie,* 79 Bankr. at 8.

The purpose of RCW 62A.9 is to provide for secured financing at less cost and with more certainty. *See* Official Comment, RCWA 62A.9–101. Parker argues that this purpose will be thwarted if Pacific First is found to have a perfected security interest. This is so, Parker argues, because Pacific First could not have contemplated that the cause of action would arise, and the official comments state that security interests can only be created in property that is customarily used as commercial security.[4] *See Capital Nat'l Bank,* 625 F. Supp. at 879. Parker then argues that lenders do not lend on the basis of hypothetical collateral.

However, we believe that lenders understand that borrowers may acquire causes of action after the security agreement is executed. The cases bear this out. At least some lenders extend credit in return for an all–encompassing security agreement. *See Sunberg,* 35 Bankr. at 783.[5]

---

[4] Presumably, if the type of property is not customarily used, allowing a party in a particular transaction to take a security interest in the property will not further the overall scheme of providing for efficient secured financing.

[5] "If the debtor himself is willing to give a creditor a security interest in everything he owns, the code does not prevent it, whether his action is prudent or not. . . .

"The description of the collateral [here] . . . did what it was meant to do— namely it included all of the goods then owned, or to be owned in the future, by the debtor . . . .

"The parties sought to create a security interest in substantially all of the debtor's property. That is what was stated and that is what was meant. The

Lenders may be more likely to lend if they are able to take a security interest in all of the property of the potential debtor. If that property includes future causes of action, the lender will perceive the borrower to have greater total collateral and will be more likely to extend the loan, or to increase the amount of the loan. Thus, allowing the parties to cover after–acquired causes of action allows the parties to structure credit transactions with the greatest flexibility.

B. *Does the security agreement between Pacific First and Raven show an intent to cover future intangibles?*

Davies Pearson argues that the parties to the security agreement could not possibly have intended to include a cause of action that was not yet extant. Citing *Sunberg* and *In re Barton,* 37 Bankr. 545 (Bankr. E.D. Wash. 1984), Davies Pearson argues that the coverage of an agreement is a matter of intent of the parties. The cases support that statement so far as it goes. *See Sunberg,* 35 Bankr. at 781; *Barton,* 37 Bankr. at 547. Security agreements are subject to the same rules of construction as are other contracts. 69 Am. Jur. 2d *Secured Transactions* § 273 (1973); *see also* RCW 62A.9–103. Thus, the intent of the security agreement is interpreted as a matter of law, *see Kelly,* 100 Wn.2d at 407, from the language of the agreement. *See In re Estates of Wahl,* 99 Wn.2d 828, 831, 664 P.2d 1250 (1983).

The wording of the agreement here manifests an intent to cover future causes of action.

In the same vein, Parker argues that neither the financing statement nor the security agreement specifically listed future causes of action. However, both list general intangibles, a term sufficient to include causes of action. *Friedman,* 9 Wn. App. at 322.

---

parties did not particularize any further, and the statute does not require it." *Sunberg,* at 783 (quoting *James Talcott, Inc. v. Franklin Nat'l Bank of Minneapolis,* 292 Minn. 277, 194 N.W.2d 775, 782 (1972).

C. *Did the financing statement warn other potential creditors that future causes of action might be subject to a security agreement?*

The purpose of a financing statement is to notify potential creditors that the potential borrower's property may be subject to a security interest. Here, upon seeing the after–acquired clause applicable to general intangibles, the creditor would know that the cause of action was subject to a security interest, and the lender would have to look further to determine whether the cause of action was covered. Because a future cause of action may be covered by a security agreement, the financing statement filed by Pacific First gave fair warning to all potential creditors that any of Raven's general intangibles, including causes of action, were potentially subject to a security interest.

D. *Conclusion as to the secured transaction.*

There was a security agreement containing a description of the collateral, the agreement was signed by Raven, value had been given, Raven had rights in the collateral, and the financing statement was filed. Therefore, Pacific First had a perfected security interest.

## II
### PRIORITIES

Pacific First had a perfected security interest before any of the other parties had filed or had become lien creditors, so it has priority rights to the judgment money. *See* RCW 62A.9–301. Pacific First, however, agrees that its priority is subject to the claim by Escure & Abolofia. The interests of Pacific First and Escure & Abolofia exhaust the fund, so it is unnecessary to determine any remaining interests.

Affirmed.

ALEXANDER, C.J., and FARIS, J. Pro Tem., concur.