IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| FRIENDS OF GRAYS HARBOR and FUTUREWISE, | No. 84019-3-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF ECOLOGY; GRAYS HARBOR COUNTY; and the STATE OF WASHINGTON, SHORELINES HEARINGS BOARD, | |
| Respondents. | |

HAZELRIGG, J. — Friends of Grays Harbor and Futurewise appeal an order from the Shorelines Hearings Board approving the Grays Harbor County Shoreline Master Program update. Because the appellants fail to meet their burden under the Administrative Procedure Act[1] to demonstrate that the Shorelines Hearings Board either based its order on an erroneous interpretation or application of law, or the order is unsupported by substantial evidence, we affirm.

---

[1] Ch. 34.05 RCW.

FACTS

In 2013, Grays Harbor County (the County) began the process of updating its Shoreline Master Program (SMP) as required by RCW 90.58.080(2)(a)(vi). In September 2018, the County submitted their draft SMP to the Department of Ecology (the Department) for approval. After a public comment period, the Department approved the SMP, contingent on required changes. The County made the required and additional recommended changes and the Department gave final approval. During the public comment period, Friends of Grays Harbor and Futurewise (collectively, FOGH), along with the Surfrider Foundation,[2] submitted comments supporting the SMP update, but gave suggestions for improvements. The County agreed with several of these suggestions and proposed changes to the SMP in accordance. FOGH then challenged the final SMP, petitioning for review before the Shorelines Hearings Board (Board) under the Shoreline Management Act of 1971 (SMA).[3] The Board upheld the SMP. FOGH timely petitioned for judicial review in Thurston County, and later moved to transfer the case to the Court of Appeals. The motion was granted.

ANALYSIS

The SMA governs the development of shorelines to "promote and enhance the public interest." RCW 90.58.020. The SMA requires that each county "adopt and administer a local shoreline master program, which regulates uses and development on shorelines located within the county." Citizens for

---

[2] Surfrider Foundation was not a party to the hearing before the Shorelines Hearings Board and is not a party to this appeal.
[3] Ch. 90.58 RCW.

Rational Shoreline Plan. v. Whatcom County, 172 Wn.2d 384, 387, 258 P.3d 36 (2011). SMPs are "a combination of planning policies and development regulations." Olympic Stewardship Found. v. Env't & Land Use Hr'gs Off., 199 Wn. App. 668, 680, 399 P.3d 562 (2017). Counties have "substantial discretion" in adopting SMPs "that reflect local circumstances," but the SMP must be approved by the Department before becoming effective. Id. (quoting WAC 173-26-171(3)(a)). The Department also sets and periodically updates administrative rules governing SMPs (Guidelines). RCW 90.58.060(1). The Department's role is primarily a supportive one, reviewing SMPs and "providing assistance to local government," as well as "insuring compliance with the policy and provisions of this chapter." RCW 90.58.050.

A party who challenges the Department's decision to approve or reject a master program may appeal to the Board. RCW 90.58.190(3)(a). The appealing party bears the burden of proof and must demonstrate "by clear and convincing evidence that the decision of the department is noncompliant with the policy of RCW 90.58.020 or the applicable guidelines, or chapter 43.21C RCW as it relates to the adoption of master programs and amendments under this chapter." RCW 90.58.190(3)(d), (c).

This court reviews a decision by the Board under the Administrative Procedure Act (APA). Pres. Our Islands v. Shorelines Hr'gs Bd., 133 Wn. App. 503, 514-15, 137 P.3d 31 (2006). The party challenging a ruling bears the burden of showing the decision is invalid. Olympic Stewardship Found., 199 Wn. App. at 685. We will grant relief only if the appealing party demonstrates one of

the nine criteria in RCW 34.05.570(3) is met. Id. Here, FOGH asserts invalidity under RCW 34.05.570(3)(d) and (e): that the agency "erroneously interpreted or applied the law" and that the order is not supported by substantial evidence. A challenge under sub-section (d), that the agency "erroneously interpreted or applied the law" is reviewed de novo. Olympic Stewardship Found., 199 Wn. App. at 686. We defer to "'an agency interpretation of the law where the agency has specialized expertise in dealing with such issues, but we are not bound by an agency's interpretation of a statute.'" Pres. Our Islands, 133 Wn. App. at 515 (internal quotations omitted) (quoting Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 154 Wn.2d 224, 233, 110 P.3d 1132 (2005)). We also "uphold an agency's interpretation of its own regulations as long as that interpretation is plausible and not contrary to legislative intent." Samson v. City of Bainbridge Island, 149 Wn. App. 33, 45, 202 P.3d 334 (2009).

A challenge under sub-section (e), that the order is not supported by substantial evidence, is reviewed "to determine if there is a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order," viewing "the evidence in the light most favorable to the party which prevailed in the highest forum that exercised fact-finding authority." Olympic Stewardship Found., 199 Wn. App. at 686. Where the Board and the Department agree on a particular question, the reviewing court is "loath to override the judgment of both agencies," as their "combined expertise merits substantial deference." Port of Seattle v. Pollution Control Hr'gs Bd., 151 Wn.2d 568, 600, 90 P.3d 659 (2004).

With this standard of review in mind, along with Washington jurisprudence mandating deference to the Board and the Department, we address each of FOGH's assignments of error.

I.      No requirement that the SMP address sea level rise

FOGH first argues the Board erred by concluding that no law or Guideline mandates the SMP address rising sea levels.  It contends that because the SMA and Guidelines "require promoting and enhancing the public interest including 'the statewide interest in the prevention and minimization of flood damages,'" SMPs are required to specifically address flooding caused by sea level rise.  In response, the Department argues this language is insufficient to create a mandate, stating that sea level rise is never specifically mentioned in the statute or regulations, and because the SMP conforms to flood regulations, it need not address sea level rise separately.

The Department is correct that the SMA contains no mention of sea level rise, and the Guidelines mention sea level rise only once stating, "[l]ocal governments are encouraged to consult department guidance for applicable new information on emerging topics such as sea level rise."  WAC 173-26-090(1). "'The primary goal in statutory interpretation is to ascertain and give effect to the intent of the Legislature.'"  King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 142 Wn.2d 543, 555, 14 P.3d 133 (2000) (quoting Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wn.2d 9, 19, 978 P.2d 481 (1999)).  We determine legislative intent by investigating the plain language of the statute.  Id. However, in interpreting a statute, "a court must not add words where the

-5-

legislature has chosen not to include them." Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003). We apply rules of statutory construction when interpreting administrative rules and regulations. Am. Fed'n of Tchrs., Local 1950 v. Pub. Emp. Relations Comm'n, 18 Wn. App. 2d 914, 922, 493 P.3d 1212 (2021).

The plain language of the SMA and Guidelines do not require SMPs to address sea level rise beyond the flood hazard regulations. To add requirements not explicitly present would be contrary to the rules of statutory interpretation. Likewise, FOGH's proposed interpretation is contrary to WAC 173-26-186(9), which provides that "local governments have reasonable discretion to balance the various policy goals of this chapter, in light of other relevant local, state, and federal regulatory and nonregulatory programs, and to modify master programs to reflect changing circumstances." Without more, FOGH has not met its burden to demonstrate that the Board "erroneously interpreted or applied the law" as required by RCW 34.05.570(3)(d).

II.    The SMP meets requirements for flood hazards

FOGH next assigns error to the Board's conclusions that FOGH failed to identify any instance where the SMP does not meet minimum requirements for flood hazards, and that the local government could lawfully rely on Federal Emergency Management Agency (FEMA) maps and local flood regulations when applying flood protection regulations. It alleges these conclusions are based on an erroneous interpretation or application of the law or are unsupported by substantial evidence. FOGH essentially argues that SMP policies and

regulations addressing flooding are based on data from past flood events, but because sea level rise is a future event, the SMP inadequately protects against flooding. Likewise, the SMP standards are based on the FEMA flood studies and maps, which are based on past flood events. FOGH contends by utilizing past data only, instead of projections and estimates for future rising sea levels, the SMP violates RCW 90.58.100(2)(h) and WAC 173-26-176(3)(g).

RCW 90.58.100(2)(h) states that "[t]he master programs shall include, when appropriate . . . [a]n element that gives consideration to the statewide interest in the prevention and minimization of flood damages." (Emphasis added). WAC 173-26-176(3)(g) states that one of the policy goals of the Guidelines governing SMPs is "[p]revention and minimization of flood damages" based on the language from RCW 90.58.100(2)(h). As the Department notes, the SMA explicitly allows SMPs to identify floodways based on FEMA maps. RCW 90.58.030(2)(b) states:

> "Floodway" means the area, as identified in a master program, that either:
>
> (i) Has been established in federal emergency management agency flood insurance rate maps or floodway maps; or
>
> (ii) consists of those portions of a river valley lying streamward from the outer limits of a watercourse upon which flood waters are carried during periods of flooding that occur with reasonable regularity, although not necessarily annually.

Here, the Grays Harbor County SMP includes "an element that gives consideration to the statewide interest in the prevention and minimization of flood

damages,"[4] and properly relies on FEMA maps to identify floodways. FOGH's contention that the SMP should go a step further is not supported by the plain language of any of the Guidelines or the SMA. The SMP is only required to include "an element" "when appropriate" that "gives consideration" to minimizing and preventing flood damages. See RCW 90.58.100(2)(h). FOGH's requested interpretation would be more burdensome than the plain language of the Guidelines permits and therefore the Board correctly interpreted and applied the law. FOGH does not discuss how the Board's order on this issue is unsupported by substantial evidence, and mere conclusory statements are not sufficient to meet its burden under the APA. As such, FOGH has failed to carry its burden on the substantial evidence challenge to the Board's order. The Board did not err as to its conclusions regarding the requirements for flood hazards.

III.     The SMP achieves no net loss as defined by the Guidelines

FOGH argues that SMP policies and regulations must achieve no net loss of ecological functions, which includes no net loss from the impacts of sea level rise and the impacts of developments that contribute to or amplify the impacts of sea level rise. It avers the Board's conclusion that the SMP properly minimizes cumulative impacts is unsupported by substantial evidence or, alternatively, erroneously interprets or applies the law. The Department counters that "there is no obligation under the Act to require the sweeping development prohibitions that FOGH seeks." It contends that "the same requirements that protect shoreline ecological functions from the impacts of development will also serve to protect

---

[4] RCW 90.58.100(2)(h).

against the impacts of sea level rise." In reply, FOGH states its proposed interpretation would require the SMP to "consider[] . . . whether a development proposal is located or designed so it will not interfere with the migration of wetlands and aquatic vegetation, will achieve no net loss, and not be flooded." FOGH's reading of WAC 173-26-186(8)(b) "is that master program policies and regulations are to 'achieve no net loss of those ecological functions' period," as opposed to no net loss requirements only applying to developments.

In reviewing a statute, this court first analyzes whether the "meaning is plain on its face," based on "the language of the statute and related statutes." O.S.T. v. Regence BlueShield, 181 Wn.2d 691, 696, 335 P.3d 416 (2014). WAC 173-26-186(8)(b) states:

> Local master programs shall include policies and regulations designed to achieve no net loss of those ecological functions.
>
> (i) Local master programs shall include regulations and mitigation standards ensuring that each permitted development will not cause a net loss of ecological functions of the shoreline; local government shall design and implement such regulations and mitigation standards in a manner consistent with all relevant constitutional and other legal limitations on the regulation of private property.
>
> (ii) Local master programs shall include regulations ensuring that exempt development in the aggregate will not cause a net loss of ecological functions of the shoreline.

"[W]e do not analyze individual subsections in isolation from the other sections of the statute when doing so would undermine the overall statutory purpose." State v. Reis, 183 Wn.2d 197, 209, 351 P.3d 127 (2015). Additionally, "[u]nder the doctrine of ejusdem generis, 'specific words or terms modify and restrict the interpretation of general words or terms where both are used in sequence.'"

Wash. Fed. Sav. & Loan Ass'n v. McNaughton Grp., 179 Wn. App. 319, 330, 319 P.3d 805 (2014) (quoting State v. Reader's Dig. Ass'n, Inc., 81 Wn.2d 259, 279, 501 P.2d 290 (1972)).  While this rule is generally applied to words "'in a pattern such as '[specific], [specific], or [general]' or '[general], including [specific] and [specific]','"[5] we apply the principle in determining the plain meaning of the rule: the specific language in subsections (i) and (ii) operates to limit the general statement in (b).  Thus, SMPs are required to achieve no net loss of ecological functions stemming from development planning and permitting (including exempt development), rather than broadly achieving no net loss of ecological functions.

This interpretation is consistent with the legislature's goals of minimizing damage to shorelines while still "provid[ing] an opportunity for substantial numbers of the people to enjoy the shorelines of the state."  RCW 90.58.020. The statement of legislative policy in RCW 90.58.020 explicitly allows "limited instances" of shoreline development, including "single-family residences and their appurtenant structures, ports, shoreline recreational uses" as well as "industrial and commercial developments which are particularly dependent on their location on or use of the shorelines."  FOGH again provides only conclusory statements that the SMP could have done more to protect against sea level rise; it fails to identify any requirement in law that it must do so.  Based on the plain language of WAC 173-26-186(b), the Board did not erroneously interpret or apply the law by concluding that the SMP is required to prevent no net loss from development, rather than from sea level rise itself.

---

[5] Wash. Fed. Sav. & Loan Ass'n, 179 Wn. App. at 330 (alterations in original) (internal quotation marks omitted) (quoting Sw. Wash. Chapter, Nat'l Elec. Contractors Ass'n v. Pierce County, 100 Wn.2d 109, 116, 667 P.2d 1092 (1983)).

While FOGH devotes a substantial amount of its briefing to discussing the detrimental impacts of sea level rise, it does not provide any authority to support its contention that the SMP must do more than meet the "no net loss standard" by addressing sea level rise independently. FOGH's argument evolves throughout the briefing, eventually transforming into one suggesting that without considering the impacts of sea level rise, the SMP cannot achieve the requirement of "no net loss" under WAC 173-26-186(b). In turn, the Department spends a significant portion of its briefing supporting its contention that the SMP meets the "no net loss" requirement, relying on the Board's findings. However, FOGH fails to challenge the Board's findings that the SMP meets the "no net loss" requirement generally.[6] "Unchallenged findings are verities on appeal." Robel v. Roundup Corp., 148 Wn.2d 35, 42, 59 P.3d 611 (2002). As such, FOGH does not meet its burden to demonstrate the Board's conclusion was unsupported by substantial evidence or that it was based on an error of law.

IV.     The Cumulative Impacts Analysis and SMP comply with the law

FOGH next contends the SMP does not comply with WAC 173-26-201(2)(a) because the Cumulative Impacts Analysis (CIA) "did not evaluate the impacts of sea level rise on the built or natural environments including flooding impacts." The Department counters that nothing in the Guidelines requires the CIA to demonstrate no net loss from sea level rise, and alternatively, the CIA

---

[6] While this statement is labelled a "conclusion of law," it operates as a finding of fact. The statement reads: "the Guidelines provide limitations and restrictions for development in the shoreline. The SMP tracks with these provisions by requiring measures that address the impacts of development and that will result in no net loss."

illustrates that the impacts of sea level rise are addressed by the SMP's restrictions on development.

As part of the requirement that SMP "regulation of development shall achieve no net loss of ecological function," local governments should conduct "[a]n appropriate evaluation of cumulative impacts on ecological functions" considering factors listed in WAC 173-26-186(8)(d)(i) through (iii) as well as "unregulated activities, development and uses exempt from permitting." WAC 173-26-201(3)(d)(iii). WAC 173-26-186(d) in turn states that in adopting SMPs, local governments "shall evaluate and consider cumulative impacts of reasonably foreseeable future development on shoreline ecological functions," including "[c]urrent circumstances affecting the shorelines and relevant natural processes." WAC 173-26-186(d), (d)(i). FOGH argues sea level rise is a "current circumstance affecting the shorelines and . . . is also a relevant natural process" that should have been evaluated and considered under the Guidelines.

Washington case law is clear that this court defers to the expertise of the Department and the Board, particularly, as here, where they agree. See Port of Seattle, 151 Wn.2d at 600. As the appealing party before the Board, and now this court, FOGH bears the burden to demonstrate not just that the SMP could have greater protections against sea level rise, but that the law required it to do so. Without more, FOGH fails to meet this burden and we conclude the Board did not err.

V.      The SMP identified and assembled required data

Next, FOGH argues the Board erred by concluding the SMP identified and assembled the applicable current, accurate, and complete scientific and technical information available, because the County and the Department failed to identify and assemble information applicable to sea level rise.  This argument centers around four documents not included in the original record submitted to the Board by the Department.  However, the Board expressly found that the four documents "were submitted to the County during the SMP review process" and this finding was not challenged by FOGH.  Again, "[u]nchallenged findings are verities on appeal."  Robel, 148 Wn.2d at 42.  FOGH alternatively avers that the County failed to utilize the data as required by RCW 90.58.100(1)(e), but it provides no argument about what information the County failed to utilize or how the information should have been utilized in the SMP.  FOGH bears the burden to demonstrate the Board's conclusions are unsupported by substantial evidence or that the Board erroneously interpreted or applied the law, rather than providing mere conclusory statements.  The Board did not err on this issue.

VI.     The SMP was based on an analysis incorporating the required data

FOGH argues the SMP ignores evidence of sea level rise and its impacts which violates RCW 90.58.100(1) and WAC 173-26-201(2)(a).  FOGH contends the County's Shoreline Analysis Report (SAR) discussed and made recommendations related to sea level rise, but these were not incorporated in the final SMP.  The Department counters that the Guidelines do not require the SAR or the County's Shoreline Restoration Plan (SRP) to be fully incorporated under

WAC 173-26-201(2)(a). It additionally argues the requirements under WAC 173-26-201(2)(a) are met because the County completed and considered the SAR while adopting the SMP, which contains a section devoted to climate change, including sea level rise.

WAC 173-26-201(2)(a) requires counties to "base master program provisions on an analysis incorporating the most current, accurate, and complete scientific or technical information available." When interpreting a statute or rule, "[w]e may use a dictionary to discern the plain meaning of an undefined statutory term." Nissen v. Pierce County, 183 Wn.2d 863, 881, 357 P.3d 45 (2015). "Base," as a verb, is defined as: "to make or form a foundation for."[7] Black's Law Dictionary defines "base" as "[t]o make, form, or serve as a foundation for . . . [t]o establish . . . to place on a foundation; to ground . . . [t]o use (something) as the thing from which something else is developed." BLACK'S LAW DICTIONARY 185 (11th ed. 2019).

Using this definition of "base," WAC 173-26-201(2)(a) requires the local government to: (1) create "an analysis incorporating the most current, accurate, and complete scientific or technical information available," and (2) use that analysis to develop the SMP. This interpretation does not necessarily require the entire SAR be incorporated, nor that all the pieces of the analysis explicitly be mentioned in the final SMP, but only that the SAR is used to develop the SMP. This is also consistent with WAC 173-26-186(9), which states that "local governments have reasonable discretion to balance the various policy goals of

---

[7] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 180 (2002).

this chapter." Here, FOGH does not dispute that the SAR contains a section on sea level rise, but rather asserts that the SMP failed to incorporate the analysis and recommendations contained in the SAR. The SMP meets the requirements of WAC 173-26-201(2)(a).

FOGH additionally argues the County failed to consider evidence that sea level rise will increase the frequency and severity of flooding, erosion, and seawater intrusion. However, the SAR notes that "there will be a net rise in the sea level in Grays Harbor County," and that "[a]s sea levels rise, shorelines will be exposed to higher water levels and thereby subject to greater potential for erosion." The SAR also references a National Research Council article on Sea-Level Rise for the Coasts of California, Oregon, and Washington: Past, Present, and Future and a report from the University of Washington and the Department on Sea Level Rise in the Coastal Waters of Washington State. WAC 173-26-201(2)(a) does not require the local government to collect currently nonexistent data, but to compile available data. FOGH does not provide any authority for the contention that every potentially applicable piece of scientific or technical data must be incorporated and used.

FOGH failed to meet its burden to demonstrate the Board erred in interpreting or applying the law, or that its conclusions were unsupported by substantial evidence.

VII.     Appendix A does not require the SMP to address sea level rise

FOGH alleges the Board erred in concluding that the Department's guidance document, Appendix A: Addressing Sea Level Rise in SMPs (Appendix

A), does not mandate SMPs to address sea level rise. It argues that Appendix A states governments are required to use current, accurate, and complete scientific and technical information regarding sea level impacts and this statement is mandatory. The Department counters that Appendix A is a technical assistance document, not a binding rule. In reply, FOGH contends that Appendix A is current scientific or technical information that the SMP must not only consider, but also be based upon, under WAC 173-26-201(2)(a).

FOGH does not contest the fact that Appendix A is a technical assistance document rather than a binding agency rule. Because it is not a binding rule, Appendix A cannot mandate the content of SMPs. FOGH provides only conclusory statements that Appendix A constitutes current scientific and technical information and that there was not "more current or specific information available." See WAC 173-26-201(2)(a). This is not sufficient to meet its burden under the APA. The Board did not err.

VIII. The SMP incorporates required protection provisions

Finally, FOGH argues the Board erred because the SRP, incorporated into the SMP, does not include land or easement acquisition recommendations as projects. The Department counters that the SRP is a guide, not a regulatory document, and nothing requires the entire plan be incorporated into the SMP. FOGH does not address this argument in reply. Because FOGH provides no statute, rule, or case law requiring the SRP be incorporated into the SMP, it fails to meet its burden to demonstrate the Board made an error of law.

FOGH also alleges the Board's conclusion that the SMP properly incorporated provisions protecting low-lying shorelines, coastal areas, and estuary habitats through acquisition or easement efforts is unsupported by substantial evidence. The SMP states that one policy of the section is to encourage "entities to aid in implementing restoration projects identified through the Grays Harbor County Shoreline Restoration Plan." Land or easement recommendations appear in the SRP as "actions" rather than "projects." Again, we review a substantial evidence challenge "to determine if there is a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order," viewing "the evidence in the light most favorable to the party which prevailed in the highest forum that exercised fact-finding authority." Olympic Stewardship Found., 199 Wn. App. at 686. Viewing the evidence in the light most favorable to the Department, "projects" refers not to a category under the SRP, but instead refers to activities delineated in the SRP. Based on our deferential standard of review, we elevate substance over form and conclude the order is supported by substantial evidence.

Affirmed.

WE CONCUR: